(No. 2406—

WILLIAM J. CONNELL, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed December 15, 1937.*
*Rehearing denied December 20, 1938.*

ANDREWS & YOUNG, for claimant.

OTTO KERNER, Attorney General; JOHN KASSERMAN, Assistant Attorney General, for respondent.

MR. JUSTICE YANTIS delivered the opinion of the court:

Claimant was injured on June 21, 1933. He was employed by the State of Illinois as a painter and was returning to the Dixon Paint Shop after putting up highway signs near Kewanee, Illinois. The State truck in which he was riding collided with another vehicle and as a result, claimant received serious facial injuries and lost several teeth which thereafter necessitated the procurement of a false plate, which was furnished by the State. He was unconscious for several hours and was treated in a hospital at Annawan. He returned to work July 17, 1933 and received his full pay during his temporary incapacity. All medical, hospital and dental bills, incurred by him prior to March, 1935 were paid by respondent. On June 26, 1934 claimant filed his claim with this court for "$1,000.00 additional compensation for serious and permanent disfigurement to face and head—under Paragraph 8(c) of the Workmen's Compensation Act." An award was entered in claimant's favor for the specific disfigurement claimed, in the sum of Five Hundred ($500.00) Dollars; such award being found in the opinion appearing in 8 C. C. R. p. 452, decided March 13, 1935. Counsel for claimant in his final brief and argument in that case asked that the "Claim be allowed to stand open, so that if in the future the consequence of the concussion and injuries become so serious as to amount to incapacity, claimant will not be barred

from having any further award to which he may be entitled under the law." The court declined to continue the case on the docket and in its opinion ruled, that any question as to increasing disability that plaintiff desired to urge in the future would be controlled by the terms of the Workmen's Compensation Act.

Plaintiff continued to work regularly for the State until November 25, 1935. On January 13, 1936 he filed a petition to review the previous award, alleging that at the time he filed his original complaint and at the time of the hearing thereon, "certain further injuries described in his complaint were considered to be so indefinite that they did not amount to a disability—that on or about November 25, 1935 these certain pains and headaches became so acute he was forced to obtain medical treatment therefor—that his disability has increased to such an extent he has been unable to work since November 25, 1935 and has necessarily incurred medical and hospital expense of approximately Four Hundred Fifty ($450.00) Dollars; further, that he has received no compensation since November 25, 1935, and requests additional compensation under the provisions of Section 19 (h) of the Workmen's Compensation Act."

A motion by respondent to strike the petition was denied, plaintiff's motion for review granted, and additional evidence by claimant and medical authorities has been introduced.

It now appears from the transcript of additional evidence, that in November, 1935, claimant complained to his superior at the Dixon Paint Shop, Mr. Goeke, that the headaches and pain in his neck had increased, and that Mr. Goeke advised him to again go to Dr. Young, the physician who had attended him immediately following his accident, and for him to follow Dr. Young's orders; that the latter examined him and sent him to Dr. Mock, and the latter sent him to St. Luke's Hospital where he remained from November 25, 1935 until January 25, 1936 and to which he again returned from February 25, 1936 until March 4, 1936. Contrary to claimant's statement in his petition for review and contrary to the affidavit of his counsel, filed January 13, 1936, "That he had received no compensation," the record shows that compensation had in fact been paid to him from the time he stopped work on November 25, 1935 until May 23, 1936, the last of

such payments having been made to him on June 4, 1936, and such compensation being, according to his testimony, the amount of one-half (½) pay, plus ten (10) per cent additional for two children, or approximately Sixty ($60.00) Dollars per month.

"Any right which the claimant has at this time must be by virtue of Section 19 (h) of the Compensation Act. The fact of the injury and the disability arising therefrom, as it existed at the time of the original hearing, are not open to review."

(*Summit Coal Co.* vs. *Ind. Com.*, 308 Ill. 121.)

Only the extent of the disability, so far as the same may have recurred, increased, diminished or ended, is a proper subject matter for consideration at this time.

At the time of the original hearing plaintiff represented in his complaint that "In addition to his disfigurement, the accident had resulted in a condition in the back of his head and neck, which constantly caused him to be afflicted with reverse headaches at frequent intervals." No award was asked for the physical discomfort or disability caused thereby, but the existence thereof was established by the record. If such condition justified an effort to obtain compensation at that time, claimant had a right to contend therefor. This, he elected not to do, representing at the time of the hearing, as above indicated, that such further injuries were considered to be so indefinite that they did not amount to a disability. This was the conclusion of claimant and his counsel at that time, notwithstanding that claimant had been a continuous patient of Dr. J. M. Young of Annawan from the date of the injury, and had been receiving medicine, massage and diathermy treatments for his neck and head during all of the time prior to the original award.

Unless the disability as it existed at the time of the former hearing has increased therefore, no award can now be granted as prayed for under the provisions of Section 19(h). What is the evidence? On August 24, 1936 claimant testified that he went back to work about July 15, 1934; that he had pain at that time in the back of his neck and at the base of the skull; that such pain was constant and that it had never ceased since the injury, and that he had such pain at all times when working. The record shows he had been back at work for nine months at the time the previous award was entered. The only testimony given by him as to an increase in physical

disability since the former hearing, is his statement, that "along in November, 1935 his neck was getting worse right along—that the nerves or cords pulled toward the left side." He further testified that the treatment given him by Dr. Young consisted of massage, some pills and some medicine to rub on the back of his neck; that Dr. Mock advised "light treatments," and it was that form of treatment that he was given at the hospital; that since he returned home his treatment has consisted of "sitting in the backyard two or three hours and then going in and having his wife massage the back of his neck."

Dr. James M. Young, a witness called by plaintiff, testified that he had examined plaintiff on June 21, 1933 immediately following claimant's accident. He described the patient's facial and head injuries as existing at that time, stated that the neck was then rigid and that plaintiff complained constantly of pain in his neck and face; that he again examined the patient in November, 1935, at which time plaintiff complained of the same stiff condition of the muscles of the neck and of extreme pain; that he, Dr. Young, did not find anything out of the ordinary or abnormal about the patient in November, 1935, except apparent pain from motion of the head. Dr. Young again examined plaintiff about August 3, 1936 and testified as follows in regard to his condition then:

"Q. Did you examine him three weeks ago (i. e., August 3, 1936?

A. Yes, Sir.

Q. Did you observe any abnormal condition at that time?

A. Nothing other than the constant stiff condition of the muscles of neck and pain on moving the head forward or laterally.

Q. Have the complaints of the claimant with reference to pain in the neck and the back of the head been constant since his original injury?

A. Apparently so. Everytime I have seen him he has complained of the same thing.

* * *

A. The symptoms were mostly subjective.

Q. Dr., did you say that you found the condition of Mr. Connell any different at the last examination than you did at the last examina- between the period of July 30, 1933 and January 1, 1934?

A. I think it is not as rigid. There is not as much pain at times. There was extreme pain then.

Q. With reference to Mr. Connell's condition last November and his condition as you found it at the time of your last examination, do you find he is in better condition, as far as his ability to work is concerned, now than he was then?

A. I think some of the rigidity has left the muscles and he might have improved somewhat since last November.

Q. Was that condition that you found last November prevalent during the preceding year?

A. Yes, Sir."

Dr. Young further stated that in his opinion plaintiff was unable to engage in ordinary labor, but it also developed in the course of his testimony that he did not know that plaintiff had in fact returned to his work in 1933 and had in fact worked thereafter until November, 1935, or that he had previously been allowed compensation and an award. However, during all this period from July 30, 1933 and continuing to February 20, 1936 plaintiff had received medicine, treatments and massage from Dr. Young from one to six times per month, as evidenced by the latter's bill, filed February 10, 1937.

Dr. Harry E. Mock, one of the Senior Surgeons of St. Luke's Hospital in Chicago, and a member of the Faculty at Rush Medical and Northwestern Medical Schools, was also called as a witness on behalf of claimant. He testified that he first examined plaintiff on November 25, 1935, and received a history of the case from plaintiff at that time. Dr. Mock stated,

"That he found no external evidence of injury to the head or neck. Head was erect but there was a restriction in flexion of forward and lateral movement due to some rigidity of the muscles of the neck. No sensory changes in the back of the neck. Found pain or tenderness in the cervical vertebrae by pushing hand on them. Complaint by patient of pain in jaws, but no abnormalties found there. Found a considerable thickening between the vertebrae, a condition of Osteitis. Condition resembles Osteoarthritis changes rather than fracture changes. Patient has eight cervical vertebrae instead of the usual seven. The condition of stiffness in the neck, tenderness and rigidity improved under rest, heat, massage, and exercise of the neck. The fifth cervical vertebrae showed some deformity and the lines suggestive of a fracture in the lateral process on the left side. At this late date it would be impossible for me to say absolutely that this was a fracture, but I can say it is suggestive of a fracture. The localized new bone formation found there could either be callous or it could be an Osteoarthritic change. I came to the conclusion that this patient may or may not have had a fracture in the fifth cervical vertebrae, but he has developed localized Osteoarthritis. If that was a fracture in the fifth cervical vertebrae, new bone has been forming since the day of the injury. It is wasn't a fracture it has been forming from two or two and one-half years. My opinion when I saw Mr. Connell on March 4, 1936 was that he might start at very light work and gradually get himself back into condition where he could do ordinary labor."

Dr. Henry Bascom Thomas, a Senior Orthopedic Surgeon of St. Luke's Hospital in Chicago, and an outstanding authority on Orthopedic Surgery, testified

"That he gave plaintiff a general examination to test his various reflexes. That patient holds his entire spine somewhat resistant, but can touch chin to chest and backward bending of neck is quite free. Very little limitations of motion actually found in the neck in any direction. Felt a pulling on the left side when patient brought his right ear over to the right shoulder. X-rays show an arthritic spur on the anterior surface of the sixty cervical vertebrae. Also a large spur found on the back of the skull. If you touch patient's skin very lightly he jumps. That is mental, a sign of fear. I believe he ought to be able to work with his back the way it is. In my opinion the pain which Mr. Connell shows upon contact is hysterical, and that there is no physiological disability that would prevent him working as a laboring man. From my experience and observation in many types of cases, the spur appearing below the seventh cervical vertebrae of plaintiff was too big to have grown since June, 1933. In my judgment it is an old spur."

No sufficient showing appears from the record to support the claim that there has been a recurrence or increase of plaintiff's disability since the former hearing and award. While plaintiff may have a condition of Osteoarthritis existing, it is not shown to be the result of the accident in question. It further appears that whatever pain and disability plaintiff may have in the head and neck is the same or less now than at the time of the former hearing, and the record does not entitle plaintiff to any additional award. Any further allowance by virtue of the provisions of Section 19(h) is denied and the claim is dismissed.